**STATE of Louisiana**

v.

**Teddy CHESTER**

**No. 2015–OK–2123**

Supreme Court of Louisiana.

12/16/2016

CRICHTON, J., additionally concurs and assigns reasons.

CRICHTON, J., additionally concurs and assigns reasons.

I agree with the majority that the pro se Motion to Waive Right to Habeas Corpus Review, filed directly with this Court, wherein Chester seeks to "immediately proceed to execution" substantively presents a claim for post-conviction relief and thus, La. C.Cr.P. art. 925 bars consideration by us: "[A]pplications for post-conviction relief shall be filed in the parish in which the petitioner was convicted." Chester's motion is also not properly before this Court pursuant to *Segura v. Frank*, 93–1271 (La. 1/14/94), 630 So.2d 714, 725 ("[A]ppellate courts will not consider issues raised for the first time on appeal.") Additionally, this claim is arguably moot, as this Court today dismissed defendant's application for post-conviction relief. *See State v. Chester*, 15–2304 (La. 12/16/16), 208 So.3d 338, 2016 WL 7335786. Finally, as the Louisiana Supreme Court, we obviously lack jurisdiction to order a waiver of federal habeas corpus review. However, and in spite of these substantial procedural deficiencies, I write separately to specifically comment on Chester's request.

This case presents horrendous facts. Two days after Christmas in 1995, Chester engaged himself in the first-degree murder of taxi driver John Adams. During what was probably not much more than a 20–second armed robbery, Adams was shot in the back of his head at point blank range. A Jefferson Parish jury unanimously found him guilty as charged and imposed the death penalty. Since Chester's direct appeal became final in 1998, he has proceeded to file a litany of post-conviction applications in which he has repetitively raised issues previously addressed on appeal.[1]

Chester has mired our courts in protracted and extensive post-conviction proceedings involving at least three separate capital defense litigation teams. Despite John Adams perhaps having 20 seconds to

---

1. An illustrative, but not exclusive, list of Chester's complaints are performance of his trial counsel; use of his confession and post-murder admissions, including letters which he authored; admission in evidence of a baseball cap containing both blood and DNA belonging to him and his victim; the alleged perjury of Chester's friends; and, shockingly, a meritless complaint that a juror perhaps referenced a Biblical concept during jury deliberation.

plead for his life, a review of this matter reveals the extensive due process afforded to Chester which, as of 2016, has spanned twenty exhaustive years and involved numerous taxpayer-subsidized lawyers at unspeakable monetary cost to our state.

Relatedly, and as I noted in my additional concurrence to *State v. LaCaze*, 15–0234 (La. 12/16/16), —— So.3d ——, I do not necessarily disagree with the concept advanced by United States Supreme Court Justice Stephen Breyer that the interminable delays in the execution of a death sentence may at some point constitute cruelty towards the convicted. Justice Breyer recently noted as follows:

> Henry Sireci, the petitioner, was tried, convicted of murder, and first sentenced to death in 1976. He has lived in prison under threat of execution for 40 years. When he was first sentenced to death, the Berlin Wall stood firmly in place. Saigon had just fallen. Few Americans knew of the personal computer or the Internet. And over half of all Americans now alive had not yet been born... Forty years is more time than an average person could expect to live his entire life when America constitutionally forbade the 'inflict[ion]' of 'cruel and unusual punishments.' Amdt. 8; *see* 5 Dictionary of American History 104 (S. Kutler ed., 3d ed. 2003). This Court, speaking of a period of *four weeks*, not 40 years, once said that a prisoner's uncertainty before execution is 'one of the most horrible feelings to which he can be subjected.' *In re Medley*, 134 U.S. 160, 172, 10 S.Ct. 384, 33 L.Ed. 835 (1890). I should hope that this kind of delay would arise only on the rarest of occasions. But in the ever diminishing universe of actual executions, I fear that delays of this kind have become more common.

**2.** Chester has previously filed similar pro-se motions with the district court, which have

*Sireci v. Florida*, —— U.S. ——, 137 S.Ct. 470, 196 L.Ed.2d 484 (Fla. 2016) (Breyer, J., dissenting from denial of certiorari) (citation omitted) (italics in original).

Therefore, if not for the aforementioned procedural deficiencies, I would favorably consider Chester's motion[2] and remand one last time for the sole purpose of directing the district court to consider an immediate issuance of a death warrant pursuant to La. R.S. 15:567, and expeditious processing by the Secretary of the Department of Public Safety and Corrections. It is time for justice to be served for this vicious cold-blooded murder committed so many years ago.